IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY GEORGE ALLEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.  05-31E |
| | ) | |
| UNITED STATES OF AMERICA, | ) | Judge Sean J. McLaughlin |
| | ) | Magistrate Judge Susan Paradise Baxter |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
COMPLAINT OR, IN THE ALTERNATIVE,  MOTION  FOR SUMMARY JUDGMENT**

**I.     Introduction**

Plaintiff Anthony George Allen, a federal inmate, brings suit against the United States of

America, seeking $5 million  in damages for potential future health problems which may result

from his alleged exposure to secondhand smoke.   Plaintiff brings his suit pursuant to the Federal

Tort Claims Act, 28 U.S.C. § 2671 et seq. ("FTCA").

Plaintiff's allegations derive from the purportedly negligent adoption of policies from

January, 2002 until February 7, 2004 regarding the sale of tobacco products to inmates, the

designation of smoking areas, and the  supposed promotion of smoking by the Warden and staff

of the Federal Correctional Institution McKean ("FCI McKean"), where Plaintiff is incarcerated.

Plaintiff alleges that as a result of the implementation of these policies, he has been forced to

breath environmental tobacco smoke, and consequently is at future risk of developing serious

health problems, including, but not limited to, lung cancer and intrauterine cancer.  (Compl. ¶ 8).

As discussed in more detail below, the Court does not have subject matter jurisdiction

over this lawsuit, as the claimed actions fall within the discretionary function exception to the

Federal Tort Claims Act, and the United States of America has not otherwise waived its sovereign immunity. Moreover, Plaintiff does not state a valid claim under the FTCA. Accordingly, Plaintiff's Complaint must be dismissed, or, in the alternative, the Court must grant summary judgment in Defendant's favor.

## II.  <u>Factual Background</u>

On August 25, 1994, Plaintiff was designated to FCI McKean. Just over one month earlier, on or about July 6, 1994, the Bureau of Prisons ("BOP") had promulgated a regulation governing smoking in federal prisons. The regulation provided that:

> [a]ll areas of Bureau of Prisons facilities and vehicles are no smoking areas unless specifically designated as a smoking area by the Warden as set forth in § 551.163.

28 C.F.R. § 551.162 (West 2004).

> (b)    At all low, medium, high, and administrative institutions other than medical referral centers, the Warden shall identify outdoor smoking areas and <u>may, but is not required to, designate a limited number of indoor smoking areas where the needs of effective operation so require,</u> especially for those who may be employed in, or restricted to, a nonsmoking area for an extended period of time.

> (c)    To the maximum extent practicable nonsmoking inmates shall be housed in nonsmoking living quarters.

28 C.F.R. § 551.163 (West 2004) (emphasis added).[1]

On or about June 21, 2002, FCI McKean issued an "Institution Supplement on Smoking and Non-Smoking Areas" ("the Institution Supplement"). With respect to staff and inmate smoking, the Institution Supplement provided the following:

---

[1] 28 C.F.R. § 255.160 <u>et seq.</u> were revised in July, 2005 to prohibit all indoor smoking within BOP facilities. The revised regulations are not at issue in this case and took effect after the filing of Plaintiff's Complaint.

3a.    <u>Staff</u>: FCI, McKean and FPC (Federal Prison Camp), McKean have been designated as non-smoking institutions. Staff are prohibited from smoking inside of buildings or entrance-ways of the camp facility or main institution.

3b(2).  Housing Units: Smoking is only permitted in inmate rooms as designated by the Unit Manager of each unit. In the event that the inmate room is assigned to one inmate smoker and one non-smoker, the room will be designated a non-smoking room. There is no smoking in the common areas, other multi-purpose areas, or entrance-ways of the housing units.

<u>See</u> Declaration of Monica Recktenwald, attached hereto as Document 1, and Institution Supplement MCK 1620.03, Smoking and Non-Smoking Areas, Document 1a.

On or about February 12, 2004, Plaintiff filed an administrative tort claim with the Bureau of Prisons Northeast Regional Office. <u>See</u> Declaration of Joyce Horikawa, attached hereto as Document 2, and Administrative Tort Claim No. TRT-NER-2004-01997, Document 2a. In his administrative tort claim, Plaintiff alleged that from January, 2002 until February 7, 2004, staff at FCI McKean negligently sold tobacco products to inmates and negligently failed to separate smoking from non-smoking inmates when making inmate quarters assignments. Plaintiff alleged that as a result of this alleged negligence, he was placed at risk of developing serious health problems in the future. <u>Id</u>. at pp. 2-3. On or about July 27, 2004, the Northeast Regional Counsel of the Federal Bureau of Prisons issued a Memorandum to Plaintiff denying his administrative tort claim. <u>See</u> Memorandum dated July 27, 2004, Document 2b. Plaintiff filed his Complaint in this case on January 26, 2005 under the FTCA, again alleging that the negligent promulgation of prison policies regarding the sale of tobacco products and smoking by inmates and staff exposed him to environmental tobacco smoke, which may adversely affect his

3

health.[2]

## III.  Applicable Legal Standards

### A.  Standard for Review of Rule 12(b)(1) Motion to Dismiss

Where the allegations in a complaint are insufficient to show that the Court has

jurisdiction over the subject matter, a motion to dismiss under Rule 12(b)(1) of the Federal Rules

of Civil Procedure is appropriate.  See 5A Wright & Miller, Federal Practice and Procedure, §

1350, 211-12 (1990).  The party asserting the existence of federal court jurisdiction bears the

burden of proving that jurisdiction over his claim actually exists.  International Ass'n of

Machinists & Aerospace Workers v. Northwest Airlines, 673 F.2d 700, 711 n. 16 (3d Cir. 1982);

Shepherdson v. Local Union No. 401, 823 F. Supp. 1245, 1248 (E.D. Pa. 1993).

When considering a challenge to a court's jurisdiction under Fed.R.Civ.P. 12(b)(1), a

court ordinarily need not limit its inquiry to the facts as pled in the complaint.  Land v. Dollar,

330 U.S. 731, 735 (1947).  Rather, "[t]he court may inquire by affidavits or otherwise, into the

facts as they exist."  Id. at 735 n. 4.  A federal court is able to take such action because it must

assure itself that it has jurisdiction over the case, and it may even resolve factual disputes in

doing so.  See Boyle v. The Governor's Veterans Outreach & Assistance Ctr., 925 F.2d 71, 74

(3d Cir. 1991) (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir.

1977)).

---

[2]In his Complaint filed in district court, Plaintiff claims that the alleged negligence
continued through January, 2005.  However, because Plaintiff has failed to exhaust his
administrative tort remedies for any incident or conduct which took place after the filing of his
administrative tort claim, his claims in this matter are properly limited to incidents or conduct
from January, 2002 until February 7, 2004, the time set forth in his administrative tort claim.
See Horikawa Dec., Document 2, and Administrative Tort Claim No. TRT-NER-2004-01997,
Document 2a.

**B.**    **Standard of Review For Fed.R.Civ.P. 12 (b)(6)**

A motion to dismiss under Rule 12(b)(6) is the appropriate method by which to challenge the legal sufficiency of claims in a complaint.  Fed. R. Civ. P. 12(b)(6); Raines v. Haverford College, 849 F. Supp. 1009, 1010 (E.D. Pa. 1994).  Although courts reviewing Rule 12(b)(6) motions generally consider only the allegations in the complaint, courts are also free to examine any exhibits attached thereto, other undisputed documents relied on by the plaintiff, other items appearing in the record of the case, and matters of public record.  Raines, 849 F. Supp. at 1019; see also Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  Indeed, if a court could not consider such documents, "'a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which [he] relied.'"  Interfaith Community Org. v. AlliedSignal, Inc., 928 F. Supp. 1339, 1345 (D.N.J. 1996)(quoting Dykes v. Southeastern Pa. Trans. Auth., 68 F.3d 1564, 1567 n.3 (3d Cir. 1995)); see also Government Guar. Fund v. Hyatt Corp., 955 F. Supp. 441, 449 (D. Virgin Is. 1997).

While courts considering motions to dismiss have a limited role, these courts should grant such motions where it is clear that no relief could be granted under any set of facts that are consistent with the allegations of a complaint.  AlliedSignal, 928 F. Supp. at 1346.  The issue is not whether the plaintiff will ultimately prevail but whether the plaintiff has any chance of doing so.  Id.; Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

**C.     Standard of Review for Summary Judgment**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). An issue is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Equimark Comm. Fin. Co. v. C.I.T. Fin. Serv. Corp., 812 F.2d 141, 144 (3d Cir. 1987). If evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Anderson, 477 U.S. at 249-50; Equimark, 812 F.2d at 144. That is, "where the record, taken as a whole could not lead a rational trier of fact to find for the nonmoving party," summary judgment is proper. Matushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 599 (1986); see also Hankins v. Temple University, 829 F.2d 437, 440 (3d Cir. 1987).

The Third Circuit has clarified that district courts should not view summary judgment motions as "a disfavored procedural shortcut," but as "the first opportunity to dispose of meritless cases." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1362 (3d Cir. 1992). Accordingly, a district court is no longer required to "turn a blind eye" to the weight of the evidence. Id. at 1363. Rather, to survive summary judgment, the non-moving party must actually come forward with "affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 257 (emphasis added).

In short, mere conjecture or speculation by the party resisting summary judgment cannot provide a basis upon which to deny the motion. Quarles v. GMC (Motors Holding Div.), 759 F.2d 839, 840 (2d Cir. 1985).

IV.  **Argument**

    A.    **Because decisions made by prison officials regarding smoking within a prison facility fall within the discretionary function exception to the Federal Tort Claims Act, this Court does not have subject matter jurisdiction over Plaintiff's <u>claims and they must be dismissed with prejudice.</u>**

The law is well-settled that the United States cannot be sued absent a waiver of its sovereign immunity.  <u>United States v. Orleans</u>, 425 U.S. 807, 814 (1976).  The Federal Tort Claims Act, 28 U.S.C. § 2671 <u>et seq.</u>, waives immunity for certain torts committed by federal employees.  There are, however, exceptions to this waiver of sovereign immunity.  The discretionary function exception to the FTCA, 28 U.S.C. § 2680(a), is perhaps the most important of the multiple statutory exclusions to the United States' liability under the FTCA.  Specifically, the discretionary function exception expressly states that the FTCA does not apply to:

> any claim based upon an act or omission of an employee of the Government exercising due care, in the execution of a statute or regulation . . . or based on the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).  The purpose of the exception is to prevent "judicial second-guessing of legislative and administrative decisions that are grounded in social, economic, and political policies through the medium of an action in tort."  <u>United States v. Varig Airlines</u>, 467 U.S. 797, 814 (1994); <u>see</u> <u>also</u> <u>United States v. Gaubert</u>, 499 U.S. 315, 322-23 (1991); <u>Scrima v. Hasty</u>, No. 97-CIV. 8433, 1998 WL 661478, at *2 (S.D.N.Y. Sept. 24, 1998).  When claims fall within the discretionary function exception, the United States cannot be held liable, as it has not waived its sovereign immunity for such claims, and the courts therefore lack subject matter jurisdiction

over the claims. <u>Montez v. U.S.</u>, 359 F.3d 392, 395 (6th Cir. 2004); <u>Alfrey v. U.S.</u>, 276 F.3d 557,

561 (9th Cir. 2002).

The United States Supreme Court has formulated a two-part test for determining whether

a government act falls within the discretionary function exception to FTCA liability. <u>See</u>

<u>Berkovitz v. United States</u>, 486 U.S. 531, 536-37 (1988); <u>Gaubert</u>, 499 U.S. at 322-23 (1991).

Under this test, a court must first consider the nature of the challenged conduct and determine

whether the conduct involved an element of judgment or choice by the employee, or whether the

employee was "bound to act in a particular way." <u>See</u> <u>Gaubert</u>, 499 U.S. at 322 (citation

omitted). "The requirement of judgment or choice is not satisfied if a federal statute, regulation,

or policy specifically prescribes a course of action for an employee to follow, because the

employee has no rightful option but to adhere to the directive." <u>Gaubert</u>, 499 U.S. at 322. If,

however, there is no statute, regulation, or policy that specifically prescribes a course of action,

and the employee's conduct is the product of judgment or choice, the first prong of the

<u>Berkovitz-Gaubert</u> test is satisfied. Such judgment is involved in the "day-to-day management

decisions" that require a choice between a range of permissible alternative courses. <u>Scrima</u>, 1998

WL 661478, at *2.

If the challenged act satisfies this first requirement, a court must then proceed to the

second part of the test, which requires a determination as to whether the employee's judgment or

choice is of the kind that Congress intended to shield from FTCA liability; that is, if it is a

decision grounded in social, economic, and political policy. <u>Berkovitz</u>, 486 U.S. at 536;

<u>Gaubert</u>, 499 U.S. at 322-23; <u>Gollehon Farming v. United States</u>, 17 F. Supp. 1145, 1154 (D.

Mont. 1998). Discretionary acts are protected from liability if they are within the range of

8

choice accorded by federal policy and law and are the results of policy determinations.  Varig Airlines, 467 U.S. at 820.  Additionally, if a regulation gives an employee discretion, "the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation" is inextricably intertwined with the policy considerations which lead to the creation of the regulation.  Gaubert, 499 U.S. at 324.[3]  Courts have further clarified that when determining whether government action is grounded in considerations of policy, the focus is not on whether the government employee involved actually weighed social, economic, or political policy considerations before acting.  Ochran v. United States, 117 F.3d 495, 499 (11th Cir. 1997). Rather, the focus is on the general nature of the judgment involved and whether it may be "susceptible to policy analysis."  Gaubert, 499 U.S. at 325.  A "policy analysis" may include the weighing of competing interests or the examination of economic constraints in light of the needs of the public.  Gollehon Farming, 17 F. Supp. 2d at 1154.

The operation of a federal prison involves a wide range of social and economic considerations, with social concerns and considerations that are markedly different from the issues that arise in the operation of any other organization.  Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 129 (1977).  The Supreme Court has repeatedly recognized that broad deference should be afforded to the discretion exercised by prison administrators in adopting and executing policies and practices which address the day-to-day problems in

_____

[3] Once a particular function is found to be discretionary, a negligence claim will fail, even if the Bureau of Prisons abused its discretion or was negligent in the performance of its discretionary functions.  Bailor v. Salvation Army, 51 F.3d at 685; see, e.g., Dykstra v. United States Bureau of Prisons, 140 F.3d 791, 795-97 (8th Cir. 1998) (no claim under the FTCA for BOP's alleged negligence in failing to protect an inmate from assault by another inmate because decisions whether to place an inmate in protective custody is the exercise of a discretionary function).

operating a corrections facility.  See, e.g., Thornburgh v. Abbott, 109 S.Ct. 1874, 1879 (1989);

Turner v. Safley, 107 S.Ct. 2254, 2259 (1987); Bell v. Wolfish, 441 U.S. 520, 547 (1979); Pell v.

Procunier, 417 U.S. 817, 827 (1974).

The duty of care owed by the Bureau of Prisons to the inmate population is broadly set

forth at 18 U.S.C. § 4042, which comprehends the discretion afforded prison officials: it requires

only that the BOP must provide "suitable quarters and provide for the safekeeping, care, and

subsistence of all [federal inmates]."  18 U.S.C. § 4042.  "While it is true that the statute sets

forth a mandatory duty of care, it does not, however, direct the manner by which the BOP must

fulfill this duty.  The statute sets forth no particular conduct the BOP personnel should engage in

or avoid while attempting to fulfill their duty to protect inmates."  Calderon v. United States, 123

F.3d 947, 950 (7th Cir. 1997).  The absence of specific guidelines of appropriate conduct by BOP

officials in administering these duties, therefore, leaves judgment or choice to BOP officials.

The Court of Appeals for the Tenth Circuit in Domme v. United States, 61 F.3d 787, 789-

90 (10th Cir. 1995); and Cerullo v. Allen, 1996 WL 734648 (10th Cir. 1996)(unpublished

decision), held that the decision as to which prison jobs plaintiff would be assigned involved an

element of judgment or choice and were based upon considerations of public policy.  Similarly,

in Castor v. United States, 883 F. Supp. 344 (S.D.Ind. 1995), the district court held that decisions

by the Bureau of Prisons as to how to handle asbestos at a federal prison are covered by the

discretionary function exception.  The court reasoned that day-to-day decisions in the prison

setting may be protected under the discretionary function exception because they involve the

exercise of discretion in determining how best to protect inmates. Id. at 353-354.

10

With respect to the use of tobacco products during the relevant time period, BOP staff are guided by 28 C.F.R. § 551.160, et seq., which provides that "[a]ll areas of Bureau of Prisons facilities and vehicles are no smoking areas unless specifically designated as a smoking area by the Warden as set forth in § 551.163." 28 C.F.R. § 551.162.    28 C.F.R. § 551.163 recognizes the ability of a prison warden to exercise discretion in making determinations regarding the use of tobacco products by staff and inmates:

> (b)    At all low, medium, high, and administrative institutions other than medical referral centers, the Warden shall identify outdoor smoking areas and may, but is not required to, designate a limited number of indoor smoking areas where the needs of effective operation so require, especially for those who may be employed in, or restricted to, a nonsmoking area for an extended period of time.
>
> (c)    To the maximum extent practicable nonsmoking inmates shall be housed in nonsmoking living quarters.

28 C.F.R. § 551.163 (emphasis added).   The regulations thus permit the warden at each BOP institution to designate, in his or her discretion, outdoor smoking areas as well as a limited number of indoor smoking areas, and to determine an institutionally-viable solution for housing nonsmoking inmates.   However, the regulation is silent as to how its provisions are to be specifically implemented or enforced; a warden is not "bound to act in a particular way." Gaubert, 499 U.S. at 329;  28 C.F.R. § 551.160, et seq.; Document 1a.

In the instant case, the decisions made at FCI McKean regarding smoking within the facility satisfy both prongs of the Berkovitz-Gaubert test, and therefore are excepted from the FTCA's waiver of liability.  Regarding the first prong, the Warden of FCI McKean exercised his discretion and issued an Institution Supplement on June 21, 2002, in which the facility was recognized as a non-smoking institution, with the limited exception of certain inmate rooms

11

occupied by smokers only.   <u>See</u> Document 1a.    The Institution Supplement clearly reflects the

choice presented to wardens in 28 C.F.R. §255.162, which states that a warden "may" – but is

not required to  – "designate a limited number of indoor smoking areas."[4]  <u>See</u> Document 3,

Declaration of Warden John J. LaManna.  The BOP regulations provide no guidance as to why,

or by what means, a warden may choose to implement a particular smoking policy, but leave

those decisions to the individuals at each facility who are best able to make those determinations.

<u>Id</u>.

      The decision to implement the rules governing smoking also satisfies the second half of

the <u>Berkovitz-Gaubert</u> test: that is, the decisions made by Warden John LaManna governing

smoking reflect both  "the needs of effective operation," of the facility, <u>see</u> 28 C.F.R. §

255.163(b), and the public policy considerations of balancing the interests and rights of the

inmates and staff at FCI McKean who smoke against the health concerns of those who work and

live at the facility, as well societal issues surrounding nicotine addiction and secondhand smoke.

<u>See</u> LaManna Dec., Document 3. The regulations in place sensibly permit each warden the

flexibility and discretion  to determine the most effective way to accomplish these ends, given the

unique factors peculiar to his or her institution.  Plaintiff cites to no statutes, regulations, or BOP

policies that would divest the Warden of FCI McKean of this discretion.

      In this case, the Warden at FCI McKean determined that the use of tobacco products

---

   [4]This is in contrast to the directive that "a Warden <u>shall</u> identify outdoor smoking
areas," <u>see</u> 28 C.F.R. § 255.162, which immediately precedes the use of the discretionary "may"
in the same regulation subsection. In interpreting this portion of § 255.162(b), the Court of
Appeals for the Ninth Circuit held that one prison warden did not have the discretion to institute
a prison-wide ban on smoking, but was <u>required</u> to identify outdoor smoking areas to
accommodate smoking prisoners.  <u>Webber v. Crabtree</u>, 158 F.3d 460, 461 (9th Cir. 1998).

would be permitted at the institution, designated certain limited areas within the buildings at FCI McKean for smoking, and further determined that staff would be informed of the smoking policy through the issuance of the Institution Supplement. Each of these acts taken by the Warden comported with BOP regulations, and each act involved exactly the type of discretionary judgment which 28 U.S.C. § 2680(a) is intended to protect. That Plaintiff may disagree with the choices made by Warden LaManna does not change the discretionary nature of those actions, nor does it invalidate the public policy issues underlying those choices.

**B.    Plaintiff has failed to state a prima facie case of negligence.**

As set forth fully above, Plaintiff's Complaint fall squarely within the discretionary function exception to the FTCA and is subject to dismissal on this basis alone. However, even if the discretionary function exception did not apply to this case, Plaintiff's Complaint would appropriately be dismissed under Pennsylvania law. Under Pennsylvania law, in order for a party to establish a cause of action for negligence, a party must aver the following four elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and resulting injury; and (4) actual damages. Ferry v. Fisher, 709 A.2d 399, 402 (Pa.Super. 1998), *citing* Prosser & Keeton on Torts, § 30 (5th ed. 1984). In this case, Plaintiff has failed to establish any of the four elements of negligence.

With respect to duty, Plaintiff cites the Institution Supplement, in which Unit Managers are delegated the discretionary task of designating certain rooms in the inmate housing units as smoking rooms. The Institution Supplement states that in the event a smoker is assigned to the same room as a non-smoker, the room will be designated a non-smoking room. The Institution Supplement also prohibits staff from smoking inside buildings or in the entrance-ways of the

main institution. See Document 1a.

Contrary to the allegations set forth in the Complaint, the Institution Supplement does not create a duty on the part of prison staff to prohibit the sale of tobacco products in the institution commissary. Nor does the Institution Supplement prohibit staff from assigning a non-smoking inmate to the same room as a smoking inmate. Finally, neither the Institution Supplement nor Pennsylvania law places a duty on the part of the Warden to personally instruct staff that smoking is not permitted inside housing units or other buildings at FCI McKean. Thus, the Complaint fails to set forth any legally cognizable duty or breach of duty by the United States.

Next, with respect to the alleged refusal of the Warden to instruct staff at FCI McKean to refrain from smoking in the housing units and/or other buildings at FCI McKean, this allegation is belied by the fact that on or about June 21, 2002, the Warden, in his discretion, issued an Institution Supplement with informed staff and inmates regarding Smoking and non-smoking areas. The Institution Supplement specifically informed that staff were not permitted to smoke inside inmate housing units or in any building at FCI McKean. See Document 1a, at p. 1.

The duty of care owed by the Bureau of Prisons to federal prisoners is governed by 18 U.S.C. § 4042, independent of any inconsistent state rule. United States v. Muniz, 374 U.S. 150, 164 (1963). See Flechsig v. United States, 991 F.2d 300, 303-04 (6th Cir. 1993). The statute provides, in pertinent part:

> The Bureau of Prisons, under the direction of the Attorney General, shall –
>
>> (2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise;
>>
>> (3) provide for the protection, instruction, and

14

discipline of all persons charged with or convicted
of offenses against the United States;

18 U.S.C. §4042(a)(2) and (a)(3).

Section 4042 has been interpreted as requiring Bureau to exercise "ordinary diligence."

Cowart v. United States, 617 F.2d 112, 116 (5th Cir. 1980), cert. denied, 449 U.S. 903 (1980);

Herrington v. United States, No. 83 Civ. 8007, 1984 WL 1279, at *2 (S.D.N.Y. Nov. 28, 1984)

(under 18 U.S.C. § 4042, government owes federal prisoners a duty of "ordinary care").

Although there was a duty to exercise ordinary care on the part of the Bureau of Prisons, there is

no evidence of breach of this duty with respect to the sale of tobacco products, the assignment of

inmates to housing units, or the instruction of staff to refrain from smoking inside housing units

or buildings at FCI McKean.

Even assuming Plaintiff could establish a duty and a breach of duty (which is not

conceded), Plaintiff has failed to establish an actual injury.  Under Pennsylvania law, no cause of

action arises in a personal injury action until there has been an **actual injury**.  Emert v. Larami

Corp., 414 Pa. 396, 200 A.2d 901 (1964);  Openbrier v. General Mills, 340 Pa. 167, 16 A.2d 379

(1940).  "The mere happening of an accident does not entitle the injured person to a verdict.

Engel v. Parkway Co., 439 Pa. 559, 562 (1970).

In this case, although Plaintiff alleges he is at risk of developing future serious health

problems, including lung cancer and intrauterine growths, he has not alleged any of these medical

issues manifested prior to the date he filed his administrative tort claim or this civil action.

Instead, Plaintiff bases his Complaint solely upon speculative future injuries. Indeed,  a review of

Plaintiff's prison medical record shows that during the relevant time period, from January 2003,

15

through January 21, 2005, Plaintiff never reported a medical complaint connected with ETS exposure. See Declaration of Dennis Olson, M.D., Document 4 and Medical Records of Plaintiff at Document 4a.

Simply stated, Plaintiff has not stated a legally valid claim under Pennsylvania law where he has failed to set forth duty, breach, causation, and most importantly, actual injury. Plaintiff's Complaint is subject to dismissal on this basis, as well as the discretionary function exception to the FTCA.[5]

## V.    Conclusion

Because the Warden appropriately exercised his discretion in determining institutional policies for smoking by inmates and staff at FCI McKean, his actions fall squarely within the discretionary function exception set forth in 28 U.S.C. § 2680(a), and are immune from suit. Additionally, Plaintiff has failed to proffer a legally cognizable negligence claim under Pennsylvania law. Accordingly, Plaintiff's negligence claims must be dismissed with prejudice, or in the alternative, the Court must grant summary judgment in Defendant's favor with regard to

---

[5]Plaintiff's claims are also subject to dismissal because they purport to be based solely on the alleged violation of a duty imposed by federal regulation. Specifically, Plaintiff alleges that staff at FCI McKean allegedly violated Bureau of Prisons regulations and the Institution Supplement governing smoking areas. Complaint at ¶¶ 6 and 7. It is well settled that violations of federal statutory or constitutional rights are not actionable under the Federal Tort Claims Act. Carlson v. Green, 446 U.S. 15, 19 (1980); U.S. Gold and Silver Investments, Inc. v. United States, 885 F.2d 620 (9th Cir. 1989); Chen v. United States, 854 F.2d 622 (2d Cir. 1988); Birnbaum v. United States, 588 F.2d 319, 327 (2d Cir. 1978). In Cecile Industries, Inc. v. United States, 793 F.2d 97 (3d Cir. 1986), a civil action filed under the FTCA, the Third Circuit held, "Plaintiffs may not base their claims [under the Federal Tort Claims Act] on alleged breaches of a duty arising solely out of federal law when there is no corresponding duty under state tort law." Cecile Industries, 793 F.2d at 99 (quoting Blessing v. United States, 447 F.Supp. 1160, 1186 n. 37 (E.D.Pa. 1978). Plaintiff has not identified, nor does research reveal, any state case law, statute, or regulation which imposes a duty upon a private citizen from violating the regulation in question or any similar regulation.

these claims.

Dated: July 7, 2005                         Respectfully submitted,

                                            MARY BETH BUCHANAN
                                            UNITED STATES ATTORNEY

                                            JESSICA LIEBER SMOLAR
                                            Assistant U.S. Attorney
                                            Western District of Pennsylvania
                                            700 Grant Street, Suite 400
                                            Pittsburgh, PA 15219
                                            (412) 644-3500
                                            PA I.D. No. 65406

17